UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 18-cr- |
| v. | Grand Jury Original |
| KEVIN DESIR, | Violation: |
| JOHNLEE PAUL, | 18 U.S.C. § 371 |
| | (Conspiracy to Commit Offense |
| PAULINE PRATT, | Against the United States) |
| also known as Polena Sharmaine Pratt Johnson, | |
| also known as Pauline Johnson, | Forfeiture: |
| | 18 U.S.C. § 982(a)(6)(A), |
| and | 21 U.S.C. § 853(p) |
| EDNA ST FLEUR | |
| Defendants. | |

## INDICTMENT

The Grand Jury charges that:

### BACKGROUND

#### Venue Within the District of Columbia

1. The conduct alleged in this Indictment began or was committed out of the jurisdiction of any particular State or district, and at least one joint offender known to the Grand Jury has no known residence within any district.

At times material to this Indictment:

#### The Conspirators

2. Defendant Kevin Desir was a Haitian national residing in The Bahamas.

3. Defendant Johnlee Paul was a Haitian national residing in The Bahamas.

4. Defendant Pauline Pratt, also known as Polena Sharmaine Pratt Johnson, also known as Pauline Johnson (Defendant Pratt) was a Bahamian national residing in The Bahamas.

5. Defendant Edna St Fleur was a Haitian national residing in The Bahamas.

6. Co-Conspirator 1 was a Haitian national residing in The Bahamas.

## Visitor Visa

7. A visitor visa, also known as a "B" visa, was a nonimmigrant visa for persons wanting to enter the United States temporarily. A "B-1" visa was for business related travel such as consulting or attending a conference. A "B-2" visa was for pleasure, such as tourism or visiting friends or relatives. A "B-1/B-2" visa was a combined visa that permitted activities for both categories.

8. An individual admitted to the United States on a visitor visa was not permitted to obtain or engage in employment while in the United States.

9. An individual admitted to the United States on a visitor visa was authorized to stay in the United States for six months. An individual could request to extend their stay for an additional six months.

10. A visitor visa was issued for a single entry into the United States or multiple entries.

11. A visitor visa was valid for a maximum of ten years.

12. An application for a visitor visa was submitted on a Form DS-160 via an online web-portal. The DS-160 required an applicant to provide information about the applicant and the applicant's intended travel, such as: place of employment; previous travel to the United States; intended dates of travel to the United States; address where the applicant will stay in the United States; purpose of travel to the United States; any travel companion; a contact person in the United

States; a United States contact address; and information about relatives.

13. The DS-160 also asked for the applicant's email address and whether the applicant had assistance in completing the application. The applicant had to provide the name and address of anyone who provided assistance in completing the DS-160.

14. An applicant had to certify that the DS-160 was true and correct before submitting it. The DS-160 warned the applicant that:

> The submission of an application containing any false or misleading statements may result in the permanent refusal of a visa or denial of entry into the United States. All declarations made in this application are unsworn declarations made under penalty of perjury. (28 U.S.C. 1746).
>
> You are certifying that you understand that any willfully false or misleading statement or willful concealment of a material fact made by you within the application may subject you to permanent exclusion from the United States and, if you are admitted to the United States, may subject you to criminal prosecution and/or deportation.

15. An applicant generally applied for a visitor visa at the Consular Affairs office of the U.S. Embassy where the applicant lived. The Consular Affairs office reviewed an applicant's DS-160 and any supporting documentation, collected an applicant's fingerprints, and interviewed the applicant to determine if the applicant was eligible for a visitor visa. At the end of an interview, the applicant was required to certify under penalty of perjury that all of the applicant's statements in the application and during the interview were true and correct.

16. Under the Immigration and Naturalization Act, every applicant for a visitor visa was presumed to be an intending immigrant, i.e., someone who was planning to visit and then permanently stay in the United States. The applicant could overcome that presumption by establishing to the consular officer that the applicant was entitled to a visitor visa, i.e., that the applicant intended to return home after a temporary visit to the United States. The applicant could

do so by demonstrating, among other things, that the applicant: (a) maintained a residence in a foreign country and did not intend to abandon that residence; (b) intended to enter the United States for a period of specifically limited duration; and (c) sought admission to the United States for the sole purpose of engaging in legitimate activities related to business or pleasure.

17. The United States had an embassy located in Nassau, The Bahamas (the Embassy).

## COUNT ONE
### (Conspiracy to Commit Offense Against the United States)

### The Conspiracy

18. Paragraphs 1 through 17 are incorporated here.

19. Beginning as early as January 1, 2015, and continuing to the present, Defendant Desir, Defendant Paul, Defendant Pratt, Defendant St Fleur, Co-Conspirator 1, and others known and unknown to the Grand Jury, knowingly and willfully conspired to commit an offense against the United States, that offense being Visa Fraud, a violation of Title 18, United States Code, Section 1546.

### Goals of the Conspiracy

20. The goals of the conspiracy were, among others:

a. for Defendant Pratt and Co-Conspirator 1 to unlawfully enrich themselves by fraudulently obtaining visitor visas for individuals to enter the United States; and

b. for Defendant Desir, Defendant Paul, Defendant St Fleur, and other conspirators to fraudulently obtain visitor visas to enter the United States.

### Manner and Means of the Conspiracy

21. It was a part of the conspiracy that individuals paid Co-Conspirator 1 to fraudulently obtain visitor visas to enter the United States.

22. It was a further part of the conspiracy that Co-Conspirator 1 utilized Defendant Pratt to submit DS-160s to the Embassy for individuals seeking to obtain fraudulent visitor visas.

23. It was a further part of the conspiracy that Defendant Pratt knowingly submitted false information about these individuals on their DS-160.

24. It was a further part of the conspiracy that Co-Conspirator 1 and Defendant Pratt provided fraudulent documentation to these individuals to facilitate the approval of their DS-160 and entry into the United States.

## Overt Acts

25. The overt acts committed by at least one conspirator to effect the object of the conspiracy, included the following:

a. On or about November 5, 2015, Defendant Desir submitted or caused to be submitted a DS-160 that provided false information about his employment;

b. On or about August 29, 2016, Defendant St Fleur submitted or caused to be submitted a DS-160 that provided false information about her employment;

c. On or about August 31, 2016, Defendant St Fleur, during her visa interview, provided false information to an Embassy consular affairs officer about her employment and the purpose of her travel;

d. On or about December 8, 2016, Defendant St Fleur travelled from The Bahamas to Fort Lauderdale, Florida, on a visitor visa;

e. On or about February 28, 2017, Defendant Paul, during his visa interview, provided false information to an Embassy consular affairs officer about the purpose of his travel;

f. On or about May 27, 2017, Defendant Paul traveled from The Bahamas to Fort Lauderdale, Florida, on a visitor visa;

5

g. Defendant Paul remained in the United States beyond the six months permitted for a visitor visa.

**(Conspiracy to Commit Offense Against the United States, in Violation of Title 18, United States Code, Section 371)**

**FORFEITURE NOTICE**

1. Upon conviction of the offense alleged in Count One, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(6)(A)(i), any conveyance used in the commission of the offense, and pursuant to 18 U.S.C. § 982(a)(6)(A)(ii), any property, real or personal, (I) that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense; or (II) that is used to facilitate, or is intended to be used to facilitate, the commission of the offense. The United States will seek a forfeiture money judgment against the defendant.

2. If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property that cannot be divided without difficulty;

the defendant shall forfeit to the United States any other property of the defendant, up to the value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Sections 982(a)(6)(A), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON

_____
ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA